# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WISCONSIN



**Jason Reiter,**
Plaintiff, pro se,

v.

26-cv-110-jdp

**Jason Boehm,**
Defendant.

## COMPLAINT

(Jury Trial Demanded)

## I. JURISDICTION AND VENUE

1. This action arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq., and related federal law. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).
2. This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367.
3. Venue is proper in this District under 28 U.S.C. § 1391(b) and § 1400(a) because Defendant resides in this District, Plaintiff resides in this District, and all relevant events and conduct occurred in Wisconsin.

## II. PARTIES

4. Plaintiff **Jason Reiter** is a natural person residing in Eau Claire, Wisconsin. Plaintiff is the sole author of the original screenplay titled *The Telemarketer* and the director of the motion pictures *The Telemarketer* and a director's cut later retitled *Open Line*.
5. Defendant **Jason Boehm** is a natural person residing in Elk Mound, Wisconsin.

## III. FACTUAL BACKGROUND

### A. The Screenplay and Option Agreement

6. Plaintiff authored an original feature-length screenplay entitled *The Telemarketer*.
7. Defendant approached Plaintiff claiming to be affiliated with a production company named "Eight-Foot Squid Productions, LLC," and sought to produce a feature film based on Plaintiff's screenplay, with Plaintiff attached as director.
8. Plaintiff and Defendant executed a document titled "Film Production Option Agreement," which purported to grant Defendant's company an option to acquire rights in the screenplay if the option were properly exercised.
9. The agreement required written notice and payment to exercise the option. Defendant never provided written notice of exercise.
10. Defendant was never a member or authorized agent of Eight-Foot Squid Productions, LLC, rendering his claimed authority fraudulent and void.
11. As a result, no copyright transfer ever occurred, and Plaintiff retained all rights in the screenplay and derivative works.
12. The written option agreement expressly reserved complete creative control of the motion picture to Plaintiff, including control over pre-production, production, and post-production elements.
13. The agreement granted Plaintiff creative approval over all substantive aspects of the project, including but not limited to the screenplay, direction, casting, editing, sound design, music, mixing, and final cut of any motion picture derived from the screenplay.
14. Under the agreement, Defendant was prohibited from editing, distributing, or otherwise exploiting the motion picture without Plaintiff's creative approval.
15. Defendant nonetheless proceeded to create and distribute an edited version of the film without Plaintiff's consent, in direct violation of the agreement and without any lawful transfer of copyright or creative authority.
16. Defendant's unauthorized edit, public premiere, DVD sales, and media promotion occurred despite Defendant's knowledge that Plaintiff retained creative control and final approval rights under the agreement.
17. A prior small claims action was dismissed for lack of jurisdiction over intellectual property and failure to establish monetary damages, without adjudication of ownership, authorship, or copyright validity.

### B. Production, Threats, and Unauthorized Control

18. Principal photography was completed in Wisconsin with Plaintiff directing.
19. During post-production, Defendant became hostile and abusive toward Plaintiff and other cast and crew members.
20. Defendant demanded possession of the footage to hire an inexperienced editor. Plaintiff initially refused.
21. Defendant threatened to burn Plaintiff's home down if Plaintiff did not relinquish the footage.

22. Under duress, Plaintiff relinquished footage. Defendant then created an inferior cut without Plaintiff's approval.

### C. Fraudulent Copyright Registrations

23. Defendant submitted Plaintiff's screenplay and Defendant's unauthorized cut of the film to the U.S. Copyright Office and registered them in Defendant's name.
24. Defendant knew or should have known he was not the author, owner, or transferee of the copyrights.
25. Copyright registration does not confer ownership, yet Defendant has repeatedly used the registrations to falsely claim control.

### D. Defendant's Premiere, DVD Sales, and Profits

26. Defendant held a public premiere of his unauthorized cut at the Cameo Budget Theater in Eau Claire, Wisconsin, which sold out at approximately 150 seats.
27. Defendant earned revenue from ticket sales at that premiere.
28. Defendant has also sold DVDs of the motion picture.
29. Plaintiff is entitled to Defendant's profits derived from these exploitations.
30. Defendant has refused to disclose the amounts earned.

### E. Plaintiff's Director's Cut and Blocked Premiere

31. Plaintiff completed his own director's cut of the film, retitled *Open Line*.
32. Plaintiff scheduled a three-day premiere event for October 31, November 1, and November 2, 2025, in Eau Claire, Wisconsin.
33. Tickets were set to be sold at $25 per ticket.
34. The venue agreement provided a 150-person capacity per night and a 50% share of food sales.
35. Plaintiff was also preparing merchandise sales.
36. Plaintiff was in discussions with local Eau Claire businesses in August 2025 to secure financial sponsorships for the event.

### F. Defendant's August 13, 2025 Threat Email

37. On August 13, 2025, Defendant sent Plaintiff a threatening email asserting exclusive copyright ownership and threatening legal and criminal action if Plaintiff released the film.
38. Defendant falsely claimed Plaintiff lacked standing due to a dismissed small-claims case and asserted he could "kill any attempt at distribution."
39. Defendant's email caused investors and collaborators to withdraw and forced Plaintiff to cancel the premiere.
40. Defendant's email constitutes ongoing infringement, repudiation of Plaintiff's rights, and interference with prospective economic advantage.

### G. Media Solicitation and False Attribution (Volume One)

41. Defendant solicited and provided information to local media outlets, including the Eau Claire newspaper **Volume One**, to promote himself as the owner and creator of the film.
42. Defendant's communications falsely attributed authorship, ownership, and creative control to Defendant and minimized or erased Plaintiff's role as writer and director.
43. These representations were made without Plaintiff's consent and with knowledge of Plaintiff's retained rights.
44. Defendant's media conduct was undertaken to legitimize Defendant's unauthorized premiere, DVD sales, and threats against Plaintiff.
45. Defendant's false public narrative damaged Plaintiff's reputation in the Eau Claire creative and business community.
46. Plaintiff suffered reputational harm, loss of sponsorship opportunities, and diminished professional standing as a result.

### H. Withholding of Production Contracts and Chain-of-Title Documents

47. During production of the motion picture, Defendant obtained and retained possession of contracts, releases, and other written agreements executed by cast, crew, and third parties in connection with the film, including but not limited to appearance releases, work-for-hire agreements, location releases, and related production documents.
48. These documents are necessary to establish clear chain of title and to lawfully distribute and exhibit Plaintiff's director's cut of the motion picture.
49. Defendant has refused to provide Plaintiff with copies of these contracts and documents despite Plaintiff's ownership of the underlying screenplay and retained creative control over the motion picture.
50. Defendant's continued possession and withholding of these materials interferes with Plaintiff's ability to complete, distribute, and exploit the film and constitutes ongoing interference with Plaintiff's rights.
51. Defendant's retention of these documents serves no legitimate purpose and is being used to obstruct Plaintiff's lawful exploitation of the motion picture.

## IV. CLAIMS FOR RELIEF

### COUNT I – DECLARATORY JUDGMENT

(17 U.S.C. § 501; 28 U.S.C. § 2201)

52. Plaintiff incorporates all prior paragraphs.
53. An actual controversy exists regarding ownership of the screenplay and motion picture.
54. Defendant never acquired copyright ownership through a valid transfer.
55. Plaintiff is the sole copyright owner of the screenplay and director's cut.
56. Plaintiff seeks a declaration confirming Plaintiff's ownership and Defendant's lack of rights.

### COUNT II – COPYRIGHT INFRINGEMENT

(17 U.S.C. § 501)

57. Defendant copied, distributed, publicly displayed, and sold Plaintiff's copyrighted work without authorization.
58. Defendant's acts include unauthorized premiere, DVD sales, media promotion, and interference with Plaintiff's release.
59. Defendant's infringement is willful.

### COUNT III – FRAUD ON THE COPYRIGHT OFFICE

60. Defendant knowingly submitted false claims of authorship and ownership to the Copyright Office.
61. Defendant used those registrations to threaten Plaintiff and third parties.

### COUNT IV – TORTIOUS INTERFERENCE

(Wisconsin Law)

62. Defendant intentionally interfered with Plaintiff's premiere, merchandise sales, sponsorships, and business relationships.
63. Defendant's conduct caused foreseeable economic and reputational harm.

## COUNT V – UNJUST ENRICHMENT

64. Defendant was unjustly enriched by exploiting Plaintiff's work.
65. Equity requires disgorgement of Defendant's profits.

## V. DAMAGES

66. Plaintiff suffered lost ticket revenue, food revenue, merchandise revenue, and sponsorship opportunities, which if fully realized would have net over $100,000 for Plaintiff.
67. Plaintiff suffered significant reputational harm.
68. Defendant earned profits from ticket sales and DVD sales in amounts presently unknown.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and grant the following relief:

A. A **declaratory judgment** that Plaintiff is the lawful owner of the copyrights and associated exclusive rights in the motion picture *The Telemarketer* and any derivative works;

B. A **permanent injunction** prohibiting Defendant from claiming, asserting, or representing ownership or control over *The Telemarketer* or any derivative works;

C. An order requiring **disgorgement of all profits** wrongfully obtained by Defendant from exploitation of *The Telemarketer*, including but not limited to exhibition, DVD sales, licensing, or promotional activities;

D. An award of **statutory damages and/or actual damages** pursuant to applicable law;

E. An order directing the **cancellation, correction, or amendment** of any copyright registrations or filings obtained by Defendant that conflict with Plaintiff's rights;

F. An order requiring Defendant to issue **corrective public statements** retracting false claims of ownership or authorship;

G. An award of **costs, expenses, and attorneys' fees** as permitted by law;

H. An order requiring Defendant to **produce and turn over to Plaintiff** all contracts, releases, licenses, assignments, agreements, and production documents in Defendant's possession or control relating to *The Telemarketer* and any derivative works;

I. **Permanent injunctive relief** prohibiting Defendant Jason Boehm from:
   1. Directly or indirectly contacting Plaintiff in any manner, including through third parties or agents; and
   2. Interfering with, misrepresenting, obstructing, or disrupting Plaintiff's present or future creative, professional, or business activities, including film production, distribution, promotion, sponsorships, and related ventures;

J. Such other and further relief as the Court deems **just and equitable**.

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**Jason Reiter**
Plaintiff, pro se
Eau Claire, Wisconsin